IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMES S. PRICE, | |
| Petitioner, | 4:23CV3209 |
| v. | |
| BARB LEWIEN, | MEMORANDUM AND ORDER |
| Respondent. | |

Following two jury trials, petitioner James S. Price ("Price") was convicted and sentenced in the District Court of Lancaster County, Nebraska (the "district court"), to 25 to 40 years imprisonment for one count of aiding and abetting robbery and one count of aiding and abetting first-degree assault. *See* Neb. Rev. Stat. §§ 28-206, 28-308, 28-324. Now before the Court is Price's Petition for Writ of Habeas Corpus (Filing No. 1) pursuant to 28 U.S.C. § 2254. After careful consideration of his claims, the Court concludes Price has not demonstrated his entitlement to relief.

I.  BACKGROUND

    A.  The Assault and Investigation

Patrick Pantoja ("Pantoja") and his friend Emmanuel Nartey ("Nartey") were walking on 14th Street in Lincoln, Nebraska, in the early morning hours of October 3, 2014. As they passed the Nebraska State Capitol Building, three men approached them and asked if they had any money. Just moments later, Pantoja was hit on the back of his head. From there, his memory of what occurred is blurry.

The brutal assault that ensued put Pantoja in a coma for a week. He next awoke in the hospital, where he was diagnosed with a severe traumatic brain injury. Nartey was the only witness to the attack. He maintained that two white men and one Black man

approached them that morning, but that only the Black man and one of the white men participated in the attack.

Investigators obtained surveillance footage from the capitol building depicting two men, one white and one Black, walking near the governor's mansion around the time of the assault. Soon thereafter, Price and his roommate Stelson Curry ("Curry") became suspects. On October 30, 2014, police searched the apartment that Price and Curry shared with one other roommate. The police found clothing that they believed matched the clothing worn by the men in the surveillance video, some of which was in Price's bedroom.

While the search was being conducted, an officer interviewed Price at the police station. He denied having any involvement in the assault. Curry was eventually identified as the Black assailant after testing showed his shoes had Pantoja's blood on them. He was arrested in February 2015. Price was investigated again in April and maintained his innocence. Ultimately, Price was arrested in July 2015 and charged with aiding and abetting robbery and aiding and abetting first-degree assault.

B. The First Trial

The first jury trial in Price's case began in early December 2016. Price was represented at trial by attorney Brent McArthur ("McArthur"). After hearing four days' of evidence, the jury received the case on the morning of December 9, 2016. The jury deliberated the rest of that day and returned to their deliberations on December 12, 2016.

That morning, the jury sent the district court a note saying, "We are having difficulty with a unanimous decision. What else can we do?" Counsel met with the trial judge and determined that the jury should be instructed to continue deliberating. When the jurors returned from lunch, the district court instructed them again that their verdict must be unanimous and that they should attempt to reach an agreement if possible. *See United States v. Herra-Herra*, 860 F.3d 1128, 1131 (8th Cir. 2017) (discussing when such

2

an instruction is proper and not impermissibly coercive). About three hours later, the jury reported they were still deadlocked.

The district court brought in the jury foreperson who expressed his belief that the jury was hopelessly deadlocked. Price requested the jury be polled, but the district court refused, finding no need to poll the jurors in light of what it believed to be a reliable report from the foreperson. Opposed to a mistrial, Price expressed his desire for the jury to continue deliberating. The district court overruled his objection, declared a mistrial, and discharged the jury.

On January 23, 2017, Price filed a plea in bar arguing that trying him again "would violate the right to be free from Double Jeopardy, Due Process, and to a Fair Trial." *See* Neb. Rev. Stat. § 29-1817 (providing the accused may "offer a plea in bar to the indictment that he has before" been acquitted, convicted, or "pardoned for the same offense"); *State v. Williams*, 744 N.W.2d 384, 392 (Neb. 2009) (stating a plea in bar "may be filed to assert . . . a claim that jeopardy was terminated by entry of a mistrial"). On May 18, 2017, the district court overruled his plea in bar, finding there was manifest necessity to have declared the mistrial. *See Williams*, 744 N.W.2d at 389 ("Double jeopardy does not arise if the State can demonstrate manifest necessity for a mistrial declared over the objection of the defendant."). The Nebraska Court of Appeals (the "court of appeals") affirmed that ruling on February 6, 2018, and further determined that "Price was not entitled to poll the jury" as to whether they were deadlocked. *State v. Price*, No. A-17-565, 2018 WL 718501, at *4 (Neb. Ct. App. Feb. 6, 2018). The Nebraska Supreme Court denied Price's petition for further review (Filing No. 11-1).

C. **The Second Trial and Appeal**

Price was retried in June 2018. McArthur represented him again. On June 15, 2018, the government and McArthur presented their opening statements to the jury. As the government aptly described in opening, the question for the jury was whether Price was the white assailant that aided Curry in assaulting Pantoja. To help them answer that

3

question, the government heavily relied on Nartey's recollection of the events of October 3, 2014, telling the jury, "So when you go back to the jury room, you are going to have to go back there and say, do we believe Mr. Nartey? That's it. That's what it's going to boil down to."

McArthur's opening also emphasized the importance of Nartey's testimony. Noting that Pantoja did not remember much of the assault, McArthur informed the jury, "Nartey has a better recollection of what happened but it's not the best." He went on to critique some of Nartey's recollections, noting that he "wasn't able to really tell many details" about a number of important elements of what happened and pointing out some potential discrepancies between Nartey's physical description of the white assailant and Price.

The government presented evidence for three days. Among the witnesses were Pantoja, Pantoja's doctor, Nartey, and law-enforcement officers involved in the investigation. *See State v. Price*, 944 N.W.2d 279, 287-89 (Neb. 2020) (describing that testimony in more detail). On June 19th, both sides rested after McArthur confirmed Price did not wish to testify or present additional evidence.

On the morning of June 20th, counsel made their closing statements to the jury, again stressing the significance of Nartey's testimony. The government asserted that "Nartey's testimony alone [was] sufficient evidence to convict" Price. For his part, McArthur emphasized that all the government had was Nartey's recollection, pointing out the lack of other evidence of Price's alleged guilt like fingerprints at the scene or blood on his clothing. He went on to go through the factors affecting the weight and reliability that should be given to Nartey's testimony, acknowledging a number of inconsistencies in his retelling of the events.

The jury received the case just before noon that day. After several hours of deliberation, the jury found Price guilty on both counts. Price soon after moved for new

counsel. The district court granted Price's motion and appointed attorney Matthew Kosmicki ("Kosmicki") to represent him. His subsequent motions for judgment notwithstanding the verdict and for a new trial were denied. On January 30, 2019, the district court sentenced Price to concurrent terms of imprisonment of 25 to 40 years on both counts.

With the assistance of his new counsel, Price appealed his convictions and sentences to the Nebraska Supreme Court. He argued that "(1) the State committed prosecutorial misconduct by making improper statements during closing argument, (2) the court abused its discretion when it denied his motion for a new trial, (3) counsel was ineffective, (4) there was not sufficient evidence to support his convictions, and (5) the court imposed excessive sentences." *Price*, 944 N.W.2d at 285. Price again challenged the court of appeals' overruling of his plea in bar and arguments assigning error to the refusal to poll the first jury. *See id.* at 291-92 (concluding those decisions established the law of the case and refusing to reconsider them).

The Nebraska Supreme Court affirmed his convictions and sentences on June 5, 2020. As to his prosecutorial-misconduct claim, the Supreme Court acknowledged Price failed to object to the complained-of statements at trial and concluded that "the remarks . . . were inferences from the evidence rather than statements of the prosecutor's personal opinion." *Id*. at 293. The Supreme Court further determined (1) the district court did not err in denying Price's motion for a new trial, (2) the evidence was sufficient to support his convictions, and (3) his sentences were appropriate. *See id.* at 294-97. Without more specific allegations as to McArthur's purported failings, it declined to consider his ineffective-assistance claim. *See id.* at 290; *State v. Haas*, 12 N.W.3d 787, 797 (Neb. 2024) (explaining that such claims may not always be resolved on direct appeal).

D. The Post-Conviction Motions

Price timely filed a *pro se* verified motion for postconviction relief (Filing No. 11-22 at 3) in the district court on May 28, 2021. *See* Neb. Rev. Stat. § 29-3001. He

asserted Kosmicki was ineffective on appeal by failing to properly allege McArthur's ineffectiveness and make other arguments. In relation to that claim, Price described the ways in which he felt McArthur fell short, including his alleged failure to impeach Nartey over his testimonial inconsistencies and more clearly highlight those weaknesses in his arguments. He also complained that McArthur failed to object to prosecutorial misconduct and effectively argue the admissibility and inadmissibility of particular pieces of evidence. Price further claimed prosecutorial misconduct violated his right to due process.

The district court ordered the government to respond and appointed counsel for Price (Filing No. 11-22 at 57). After hearing arguments from both sides, the district court overruled Price's postconviction motion without holding an evidentiary hearing (Filing No. 11-22 at 96). With regard to McArthur's purported failings, the district court found some of Price's concerns were belied by the record and noted the efforts McArthur made to highlight flaws in the witnesses' testimony. Ultimately, the district court found that Price could not demonstrate a reasonable probability that any change in his tactics would have altered the outcome of the trial. *See Strickland v. Washington*, 466 U.S. 668, 696 (1984) (describing this requirement of an ineffective-assistance claim). Nor was it persuaded by the record that Kosmicki was unconstitutionally ineffective.

Finally, the district court found Price's prosecutorial-misconduct allegations were procedurally barred because the Supreme Court had already rejected Price's claims. *See Price*, 944 N.W.2d at 292-94. Under Nebraska law, "a motion for postconviction relief cannot be used to secure review of issues that were known to the defendant and which were or could have been litigated on direct appeal." *State v. Galindo*, 994 N.W.2d 562, 574 (Neb. 2023).

On appeal, the court of appeals affirmed the district court's decision to deny Price's postconviction motion. *See State v. Price*, No. A-22-687, 2023 WL 3698288, at *16 (Neb. Ct. App. May 30, 2023). The court of appeals agreed that Price's

prosecutorial-misconduct claim was procedurally barred. *See id.* In reviewing his ineffective-assistance arguments, it largely concluded Price could not make a sufficient showing of prejudice resulting from McArthur's alleged failings. *See id.* at *6-*15; *State v. Cullen*, 972 N.W.2d 391, 394 (Neb. 2022) (explaining that in a layered ineffective-assistance claim, "[i]f trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue"). The Supreme Court denied Price's petition for further review of the matter (Filing No. 11-3).

That brings us to these federal habeas proceedings. On November 3, 2023, Price filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, this time with the assistance of new counsel. As required, Price's petition named Michele Wilhelm ("Wilhelm"), then the Warden of the Nebraska State Penitentiary ("NSP"), as the respondent.[1] *See* Rule 2, Rules Governing Section 2254 Proceedings in the United States District Courts (stating the petitioner should "name as the respondent the state officer who has custody"). Price's petition sets forth three general ways in which he believes the state-court proceedings violated his federal constitutional rights. That includes his arguments that (1) McArthur was ineffective, (2) the prosecutors engaged in misconduct, and (3) he was retried in violation of the prohibition against double jeopardy. *See* U.S. Const. amend. V, VI, XIV.

The Court reviewed Price's petition (Filing No. 4) and ordered Wilhelm to respond. *See* Rule 4, Rules Governing Section 2254 Proceedings in the United States District Courts (requiring the district court to order a response or take other action unless "it plainly appears from the petition . . . that the petitioner is not entitled to relief"). On January 30, 2024, Wilhelm filed the state-court records (Filing No. 11), an answer (Filing No. 12), and a brief (Filing No. 13) asserting the Court should dismiss Price's petition without holding an evidentiary hearing. Her brief argued that Price's prosecutorial-

---

[1]Wilhelm has since been substituted in this case by respondent Barb Lewien (the "respondent") (Filing No. 26), the current warden of the NSP. *See* Fed. R. Civ. P. 25(d).

7

misconduct claim was procedurally defaulted and that his other claims for relief were without merit.

On September 25, 2024, the Court reviewed that response and generally found it lacked the detail necessary to enable a meaningful analysis of Price's claims (Filing No. 21). It agreed, however, that Price's prosecutorial-misconduct claim was procedurally barred and dismissed that claim. Wilhelm was ordered to more thoroughly respond to Price's double-jeopardy and ineffective-assistance claims by October 25, 2024. The Court gave Price an opportunity to file a reply brief.

Wilhelm promptly filed supplemental briefing (Filing No. 22) maintaining that Price was unable to establish his entitlement to relief on the two remaining grounds. Price replied (Filing No. 25) on November 8, 2024, in further support of his claims.

## II.    DISCUSSION
### A.    Standard of Review

Under § 2254, "[a] state prisoner may request that a federal court order his release by petitioning for a writ of habeas corpus." *Shinn v. Ramirez*, 596 U.S. 366, 375 (2022). But the Court's power to grant such relief is sharply "restricted under the Antiterrorism and Effective Death Penalty Act of 1996 [('AEDPA')]." *Shoop v. Twyford*, 596 U.S. 811, 818 (2022). AEDPA "provides that the writ may issue 'only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Id.* (quoting 28 U.S.C. § 2254(a)) (alteration in original).

A state prisoner generally may bring a habeas petition in federal court only once they have "exhausted the remedies available in state court." 28 U.S.C. § 2254(b)(1)(A). Even then, AEDPA greatly limits a federal court's review of claims already adjudicated in state court. *See Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (explaining the law's purpose to limit intrusions on state sovereignty). For one, the Court must "give great deference to the factual findings made by the state court." *Roberts v. Payne*, 113 F.4th

801, 807 (8th Cir. 2024); *see also* 28 U.S.C. § 2254(e)(1) (providing "a determination of a factual issue made by a State court shall be presumed to be correct" unless the petitioner rebuts the presumption "by clear and convincing evidence"). It is also usually confined to reviewing the petitioner's "claim[s] based solely on the state-court record." *Shinn*, 596 U.S. at 378; *see also Marcyniuk v. Payne*, 39 F.4th 988, 999 (8th Cir. 2022) (explaining § 2254(e)(2)'s stringent standard for expanding the habeas record).[2]

As relevant here, § 2254(d) further "provides that if a claim was adjudicated on the merits in state court, a federal court cannot grant relief unless the state court (1) contradicted or unreasonably applied [the Supreme Court's] precedents, or (2) handed down a decision 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Twyford*, 596 U.S. at 818-19 (quoting 28 U.S.C. § 2254(d)(2)); *see also Bookwalter v. Vandergriff*, 73 F.4th 622, 624 (8th Cir. 2023). Meeting either of those grounds for relief is "meant to be difficult, because AEDPA 'reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems.'" *Smith v. Titus*, 958 F.3d 687, 691 (8th Cir. 2020) (quoting *Harrington*, 562 U.S. at 102).

"A state court decision is 'contrary to' clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court reaches the opposite result in a case involving facts that are materially indistinguishable from relevant Supreme Court precedent." *Id.*; *see also Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). To show the state court unreasonably applied Supreme Court precedent, on the other hand, the petitioner must demonstrate the state court identified the "correct governing legal principle . . . but unreasonably applie[d] that principle to the facts of the prisoner's case." *Bookwalter*, 73 F.4th at 624 (quoting *Nash v. Russell*, 807 F.3d 892, 897 (8th Cir. 2015)); *see also Smith*, 958 F.3d at 691

---

[2]Price does not appear to make any request for or showing entitling him to an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (setting forth limited circumstances under which a court may hold an evidentiary hearing on a habeas petition).

(stating a state court also unreasonably applies the law where it "unreasonably extends or refuses to extend [an established] legal standard to a new context" (quoting *Munt v. Grandlienard*, 829 F.3d 610, 614 (8th Cir. 2016))). Whether a rule of law was unreasonably applied varies based on "the rule's specificity," as a more general rule gives courts "more leeway . . . in reaching outcomes in case-by-case determinations." *Harrington*, 562 U.S. at 101 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)).

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Instead, the Court must ask whether the state court's "determination was unreasonable—a substantially higher threshold." *Id.* To meet that significant burden, the state prisoner "must show that the state court's decision was not merely wrong or even clearly erroneous but 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bookwalter*, 73 F.4th at 624 (quoting *White v. Woodhall*, 572 U.S. 415, 419-20 (2014)).

"Similarly, if a petitioner alleges the state court's decision 'was based on an unreasonable determination of the facts' under § 2254(d)(2), it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.'" *Brown v. Davenport*, 596 U.S. 118, 135 (2022) (quoting *Brumfield v. Cain*, 576 U.S. 305, 314 (2015)). Nor does the "existence of some contrary evidence in the record [] suffice to show that the state court's factual determination was unreasonable." *Ervin v. Bowersox*, 892 F.3d 979, 985 (8th Cir. 2018) (quoting *Cole v. Roper*, 783 F.3d 707, 711 (8th Cir. 2015)). Instead, the challenged factual findings only warrant habeas relief where they "could not reasonably be derived from the state court evidentiary record." *Id.* (quoting *Barnes v. Hammer*, 765 F.3d 810, 814 (8th Cir. 2014)).

B.   Analysis

1.   **Ineffective Assistance of Counsel**

The Court's review of Price's ineffective-assistance claim is "doubly deferential." *Springs v. Payne*, 95 F.4th 596, 601 (8th Cir. 2024) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). That is because the already-deferential review mandated by AEDPA is combined with the stringent requirements for establishing a claim under *Strickland*. *See Springs*, 95 F.4th at 601; *Minnick v. Winkleski*, 15 F.4th 460, 468 (7th Cir. 2021) ("Deference is layered upon deference in these cases because federal courts must give 'both the state court and the defense attorney the benefit of the doubt.'" (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013))). Under *Strickland*, the petitioner must establish (1) their counsel's performance was so deficient that they were not "functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) those errors prejudiced their defense. *Weaver v. Massachusetts*, 582 U.S. 286, 299-300 (2017) (quoting *Strickland*, 466 U.S. at 687).

That burden is arduous. "The performance prong requires the claimant to overcome a 'strong presumption that counsel's representation was within the wide range of reasonable professional assistance' by showing that counsel's performance not just 'deviated from best practices' but 'amounted to incompetence.'" *Dorsey v. Vandergriff*, 30 F.4th 752, 757 (8th Cir. 2022) (quoting *Harrington*, 562 U.S. at 104-05). The heavy "burden of rebutting this presumption 'rests squarely on the defendant.'" *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (quoting *Titlow*, 571 U.S. at 22). To establish deficient performance, the petitioner must show "that counsel took an approach that no competent lawyer would have chosen," *id.*, and therefore "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Strickland*, 466 U.S. at 687.

The Court "giv[es] a heavy measure of deference to counsel's judgment" and attempts to judge their representation without the tinge of hindsight. *Strong v. Roper*, 737 F.3d 506, 518 (8th Cir. 2013) (quoting *Rompilla v. Beard*, 545 U.S. 374, 380 (2005)). It

11

further entrusts trial-strategy decisions, including the choice of "cross-examination techniques," "to the professional discretion of counsel." *United States v. Orr*, 636 F.3d 944, 952 (8th Cir. 2011) (quoting *United States v. Villalpando*, 259 F.3d 934, 939 (8th Cir. 2001)). As such, the alleged failure of counsel to properly examine a witness will only raise a constitutional concern in rare cases where "counsel failed to cross-examine a witness who made grossly inconsistent prior statements." *Id.* (quoting *Whitfield v. Bowersox*, 324 F.3d 1009, 1017 (8th Cir. 2003), *vacated in part on other grounds*, 343 F.3d 950, 950 (8th Cir. 2003)).

"The prejudice prong requires the claimant to demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Dorsey*, 30 F.4th 757 (quoting *Harrington*, 562 U.S. at 104). The ultimate question for the Court is whether counsel's errors rendered "the result of the trial unreliable or the proceedings fundamentally unfair." *Collins v. United States*, 28 F.4th 903, 906 (8th Cir. 2022) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). The likelihood that the outcome would have been different "must be substantial, not just conceivable." *Donelson v. Steele*, 16 F.4th 559, 570 (8th Cir. 2021) (quoting *Harrington*, 562 U.S. at 122).

Adding more complexity, the claim Price presented in state court was one of layered ineffective assistance "based on [Kosmicki's] failure to [effectively] raise a claim on appeal of [the] ineffective assistance of" McArthur. *State v. Parnell*, 943 N.W.2d 679, 689 (Neb. 2020); *see*, *e.g.*, *Morelos v. United States*, 709 F.3d 1246, 1253 (8th Cir. 2013). In reviewing such a claim, courts often "begin by assessing the strength of the claim appellate counsel failed to raise." *State v. Sellers*, 858 N.W. 2d 577, 585 (Neb. 2015). "If trial counsel was not ineffective," the petitioner cannot establish they were prejudiced by any error committed by their appellate counsel. *Id.*; *accord Morelos*, 709 F.3d at 1253.

Price has not shown the court of appeals unreasonably applied these principles or otherwise came to conclusions that were contrary to law in rejecting his ineffective-

12

assistance claim. To start, his petition and opening arguments hardly mention the court of appeals' analysis. *See McNabb v. Comm'r Ala. Dep't of Corr.*, 727 F.3d 1334, 1339-40 (11th Cir. 2013) (explaining that a habeas petition should "specify all grounds for relief" and "state the facts supporting all grounds"). As the respondent notes, Price's initial arguments focus mainly on the errors he perceives to have been committed by the district court in reviewing his state postconviction motion. That does not suffice to establish a federal habeas claim. *See Springs*, 95 F.4th at 600-01 (explaining the federal district court's review on a § 2254 claim is of the decision of the "last state court to have addressed the [petitioner's] claim").

Price's reply brief belatedly adds some detail to his argument. There, Price emphasizes the inconsistencies in Nartey's testimony and his belief that McArthur failed to effectively address those discrepancies on cross-examination. Based on those purported errors, he claims the court of appeals failed to fully grasp the probability that those choices prejudiced him. In Price's view, "[t]he prejudicial impact of the cumulative violation" of his Sixth Amendment rights is clear from a comparison of the differing outcomes of his two trials. He also takes issue with some of the ways in which the court of appeals interpreted the record regarding the evidence surrounding the descriptions of the white assailant and innocent white male.

After careful review, the Court finds those arguments still fail to meet the high bar set by *Strickland* and AEDPA. To start, the cumulative-effect approach that Price demands has been rejected by the Eighth Circuit on multiple occasions. *See Shelton v. Mapes*, 821 F.3d 941, 950 (8th Cir. 2016) ("*Strickland* does not authorize a cumulative inquiry of counsel's performance."); *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief."); *accord Hill v. Mitchell*, 842 F.3d 910, 948 (6th Cir. 2016). *But see Cargle v. Mullin*, 317 F.3d 1196, 1207 (10th Cir. 2003) (permitting the application of "cumulative-error review to legally diverse claims"); *State v. Garcia*, 994

N.W.2d 610, 705 (Neb. 2023) ("Although one or more trial errors might not, standing alone, constitute prejudicial error, their cumulative effect may be to deprive the defendant of his or her constitutional right[s].").

Nor has Price persuaded the Court that the court of appeals otherwise erred in determining that he failed to establish prejudice as to his ineffective-assistance claims. Those conclusions were not "baseless" or "speculative," as Price claims. Even in light of his alternative claims, the court of appeals' analysis "could [] reasonably be derived from the state court evidentiary record." *Ervin*, 892 F.3d at 985 (quoting *Barnes*, 765 F.3d at 814). The mere fact that some parts of its reasoning may lead to disagreement is insufficient. *See Andrew v. White*, 604 U.S. \_\_\_, \_\_\_, 145 S. Ct. 75, 80 (2025) (stating an "unreasonable application"' of federal law "is one with which no fairminded jurist would agree"). Overall, Price falls short of demonstrating any serious errors warranting relief.

### 2. Double Jeopardy

Price also asserts the denials of his plea in bar and request to poll the jury violated his rights under the Double Jeopardy Clause. *See* U.S. Const. amend. V, cl. 2, XIV. Again, his petition largely ignores the court of appeals' analysis of those arguments—which he raised earlier in the plea-in-bar proceedings and on direct appeal.[3] In his reply brief, Price briefly elaborates on his claim, essentially arguing the court of appeals erred in not considering potential constitutional grounds underlying his request to poll the jury and in failing to give proper weight to his objection to the declaration of a mistrial. Neither of these arguments are grounds for relief under § 2254.

---

[3]Though Price presented these arguments to the Nebraska Supreme Court in appealing his conviction, the Supreme Court's refusal to further review the merits of his claim under the law-of-the-case doctrine was largely procedural. For that reason, this Court's review of Price's double-jeopardy claim focuses on the court of appeals' decision during his plea-in-bar proceedings. *See Brown v. Davenport*, 596 U.S. 118, 141 (2022) (explaining that "the Court "assess[es] the reasonableness of the 'last state-court adjudication on the merits' of the petitioner's claim" (quoting *Greene v. Fisher*, 565 U.S. 34, 40 (2011))).

Price gives short shrift to the court of appeals' review of his polling-related argument. In reality, the court of appeals addressed the entirety of the argument Price presented in his short briefing on the matter (Filing No. 11-7). That argument claimed that, like in *State v. Combs*, 900 N.W.2d 473, 481 (Neb. 2017), the district court "deprived him of the opportunity to determine whether the jury was deadlocked on both counts" by not polling the jurors. *See* Neb. Rev. Stat. § 29-2024 (providing that, when the jury agrees upon their verdict, it must be rendered into open court and "the jury may be polled at the request of either the prosecuting attorney or the defendant").

The court of appeals considered that claim as it was presented and concluded that *Combs* did "not create a new right to poll the jury before the entry of a mistrial." *Price*, 2018 WL 718501, at *4. It further found that—unlike in *Combs*—"there [were] no facts in the record that call[ed] into question the jury being deadlocked as to all counts." *Id.* at *5. Contrary to Price's assertions, the court of appeals was not required to speculate about other grounds supporting his entitlement to poll the jury that he did not raise. Price has not shown any error in that decision that would permit this Court to grant relief. *See Donelson*, 16 F.4th at 567 (discussing AEDPA's "high bar" for relief); *Kemp v. Kelley*, 924 F.3d 489, 499 (8th Cir. 2019) (stating "a federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state court" (quoting *Arnold v. Dormire*, 675 F.3d 1082, 1086 (8th Cir. 2012))).

Finally, Price does not establish any error in the court of appeals' conclusion that the district court did not abuse its discretion in declaring a mistrial. *See Price*, 2018 WL 718501, at *5. The court of appeals applied the relevant factors to the facts of Price's case in a reasonable manner. *See id.* at *3-*4; *Williams*, 744 N.W.2d at 394; *Renico v. Lett*, 559 U.S. 766, 774 (2010) (describing the trial judge's broad discretion to assess the factors and declare a mistrial). His disagreement with the weight it assigned to those factors does not constitute grounds for federal habeas relief. *See Twyford*, 596 U.S. at

15

818 ("The question under AEDPA is thus not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable"); *Dunn v. Reeves*, 594 U.S. 731, 733 (2021) ("Federal habeas courts must defer to reasonable state-court decisions.").

### 3. No Certificate of Appealability

Price cannot appeal this ruling unless he first obtains a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *Buck v. Davis*, 580 U.S. 100, 115 (2017). To obtain a certificate of appealability, he must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The pertinent question, therefore, is whether Price "has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck*, 580 U.S. at 115 (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003)). "When a claim is dismissed based on procedural default, a certificate should be granted only where there is a debatable constitutional claim and a debatable procedural ruling." *Dorsey*, 30 F.4th at 757 n.2 (quoting *Dansby v. Hobbs*, 766 F.3d 809, 840 n.4 (8th Cir. 2014)); *see also Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Because Price has not made those showings at this point, the Court will not issue a certificate of appealability.

In light of the above,

IT IS ORDERED:

1. Petitioner James S. Price's Petition for Writ of Habeas Corpus (Filing No. 1) is denied.
2. No certificate of appealability will issue.
3. A separate judgment will be entered.

16

Dated this 14th day of April 2025.

                                      BY THE COURT:

                                      Robert F. Rossiter, Jr.
                                      Chief United States District Judge